**LANDVER LAW CORPORATION, APC**
Alina Landver (SBN 231077)
9301 Wilshire Boulevard, Suite 605
Beverly Hills, California 90210
Tel: (310) 461-3737
Fax: (310) 461-3736
Email: alina@landverlaw.com

**KEENER AND ASSOCIATES, P.C.**
Kevin Keener (*pro hac vice*)
161 North Clark Street, Suite 1600
Chicago IL 60601
Tel: (312) 523-2164
Email: kevin.keener@keenerlegal.com

Attorneys for Plaintiff
ULTRA PRO INTERNATIONAL, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTRA PRO INTERNATIONAL, LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> BCW DIVERSIFIED, INC., an Indiana Corporation, <br><br> and <br><br> ERIC BROWNELL, an individual. <br><br> Defendants. | CASE NO. **2:24-cv-8467** <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DILUTION** <br><br> Judge: <br> Magistrate Judge: <br><br> JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff Ultra PRO International, LLC hereby files this Complaint for, *inter alia*, trademark infringement, unfair competition, and related claims against Defendants, on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

///

///

**Parties**

1. Ultra PRO International, LLC ("Plaintiff") is a Delaware limited liability company with its principal place of business located at 6049 Slauson Avenue, Commerce, California 90040.  Plaintiff is a manufacturer, wholesaler, and retail seller of protective card sleeves, binders, and holders for collectible trading cards and game cards.

2. Upon information and belief, Defendants BCW Diversified, Inc. ("BCW Diversified") is a corporation incorporated under the laws of Indiana with a principal place of business located at 8984 IN-236, Middletown, Indiana 47356.

3. Upon information and belief, Eric Brownell ("Brownell") is an individual with an address of 11429 Woodview Court, Fishers, Indiana 46038.

4. Upon information and belief, Brownell is a corporate officer, director, and owner of BCW Diversified.

5. Brownell lists his position on LinkedIn.com as "President" of BCW Diversified, Inc. The "About" section on Brownell's LinkedIn.com profile states "Business owner & leader with expertise in business process, operations leadership, and systems design. Experience includes implementation of business software applications aligned with critical business requirements. Responsibilities include full P&L responsibilities, partnership and distribution channel development, startup company creation, and sales."

6. In an "About Us" video on BCW's website and on YouTube, Brownell make statements showing his direct involvement in BCW Diversified's activities, including "We make products ourselves," and "I enjoy running a business. This is a fun business to be a part of."

7. Upon information and belief, Brownell personally authorized, directed, and participated in the infringing acts of BCW Diversified. Upon information

and belief, Brownell is the guiding spirit behind BCW Diversified's wrongful conduct and is the central figure behind BCW Diversified's infringing activity. (BCW Diversified and Brownell are herein collectively referred to as "Defendants").

### Jurisdiction and Venue

8.  This is an action for trademark counterfeiting and trademark infringement, trademark dilution, and unfair competition and false designation or origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq., as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (October 12, 1984), the Anti-Counterfeiting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (October 13, 2008) (the "Lanham Act"), and for unlawful and deceptive acts and practices under the laws of the State of California.

9.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 112l. This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

10. This Court has personal jurisdiction over the Defendants. Personal jurisdiction exists specifically over the Defendants because they (directly and/or through their subsidiaries, divisions, groups or distributors) have sufficient minimum contacts with the Central District of California as a result of substantial business conducted within the State of California. Upon information and belief, Defendants had knowledge that Plaintiff is located in this judicial District and that Plaintiff would suffer harm in this judicial District. Personal jurisdiction exists specifically over Defendants because they transact business in the State of California and in the Central

District of California. Defendants have committed tortious acts in this District and the State of California and have expressly aimed their actions at this District and the State of California with the knowledge that they would cause harm and substantial injury to Plaintiff in the District and the State of California.

11.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the Defendants are entities or individuals subject to personal jurisdiction in this District.  Venue is also proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendants directly targets its business activities towards consumers in the State of California.

**Background Facts**

12.   Plaintiff is a manufacturer, wholesaler, and retail seller of protective card sleeves, binders, and holders for collectible trading cards and game cards. Plaintiff has been in operation for decades and is extremely well known and famous for its products. Card game and collection enthusiasts across the nation, and the world, know Plaintiff and its products. Plaintiff's products are the epitome of protective holders for collectibles. Plaintiff leads the industry in the development and sale of products specifically designed for consumers to utilize to protect valuable and specialized game cards and collectible cards.

13.   Plaintiff is the owner of several United States trademark registrations for its products.

14.   Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 1,687,833 for the mark ULTRA PRO for "plastic pages for containing photographs, cases and the like."  This registration for the mark ULTRA PRO is incontestable. The registration is valid, subsisting, unrevoked, and uncancelled.  A genuine and authentic

copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 1.

15. Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 1,857,678 for the mark ULTRA PRO for "albums for containing plastic pages for collectible cards, photographs, comic books, stamps, coins and the like; plastic protective sleeves and pages for comic books; plastic pages for containing milk caps; and plastic sleeves for collectible cards."  This registration for the mark ULTRA PRO is incontestable. The registration is valid, subsisting, unrevoked, and uncancelled.  A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 2.

16. Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number for the mark ULTRA PRO for "playmats, namely, desktops mats providing a playing surface for card games."  This registration for the mark ULTRA PRO is incontestable. The registration is valid, subsisting, unrevoked, and uncancelled.  A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 3.

17. Plaintiff has used the ULTRA PRO marks on goods in commerce since at least as early as September 23, 1990. Plaintiff's ULTRA PRO mark is famous in relation to Plaintiff's products.

18. Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number for the mark PRO-BINDER for "protective binders for storing collectible trading cards and game cards; plastic and leatherette binders for storing collectible trading cards and game cards; binders containing plastic sleeves for holding, protecting, and storing collectible trading cards and game cards" and "gaming accessories, namely, protective binders for game cards and game pieces; tabletop

gaming accessories in the nature of binders with plastic pockets for holding and storing game cards and collectible trading card game cards." The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 4.

19.    Plaintiff has used the PRO-BINDER mark on goods in commerce since at least as early as 2012. Plaintiff's PRO-BINDER mark is famous in relation to Plaintiff's products.

20.    Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 6,615,503 for the mark PENNY SLEEVES for "plastic holders specifically adapted for holding and protecting collectible trading cards and sports trading cards" and "card game accessories, namely, plastic card holders for game cards, collectible trading card game cards, and playing cards." The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 5.

21.    Plaintiff has used the PENNY SLEEVES marks on goods in commerce since at least as early as 1998. Plaintiff's PENNY SLEEVES mark is famous in relation to Plaintiff's products.

22.    Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 6,615,452 for the mark MINI SNAP for "plastic holders specifically adapted for holding and protecting collectible trading cards and sports trading cards" and "card game accessories, namely, plastic card holders for game cards, collectible trading card game cards, and playing cards." The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 6.

23.   Plaintiff has used the MINI SNAP mark on goods in commerce since at least as early as 1996. Plaintiff's MINI SNAP mark is famous in relation to Plaintiff's products.

24.   Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 2,938,691 for the mark DECK VAULT for "containers for storing collectible cards." This registration for the mark DECK VAULT is incontestable. The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 7.

25.   Plaintiff has used the DECK VAULT mark on goods in commerce since at least as early as October 15, 2003. Plaintiff's DECK VAULT mark is famous in relation to Plaintiff's products.

26.   Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number for the mark CHROMAFUSION TECHNOLOGY for "plastic material sold as a component of plastic protective sleeves having an opaque side and translucent side for gaming cards and specifically adapted for use in card game competitions and tournaments; plastic material sold as a component of plastic holders in the nature of sleeves having an opaque side and translucent side specifically adapted for holding and protecting game cards and for use in card game competitions and tournaments." The registration is valid, subsisting, unrevoked, and uncancelled. A genuine and authentic copy of the U.S. federal trademark registration certificate for this mark is attached as Exhibit 8.

27.   Plaintiff is the owner of all rights, title, and interest in and to United States Trademark Registration Number 6,976,683 for the mark TOPLOADER for "plastic holders for gaming cards; plastic holders for trading cards." The

1   registration is valid, subsisting, unrevoked, and uncancelled.  A genuine

2   and authentic copy of the U.S. federal trademark registration certificate for

3   this mark is attached as Exhibit 9.

4   28.  Plaintiff has used the TOPLOADER mark on goods in commerce since at

5   least as early as 1998. Plaintiff's TOPLOADER mark is famous in relation

6   to Plaintiff's products.

7   29.  Upon information and belief, BCW Diversified is a corporation that

8   designs, manufactures, and sells products designed to protect, store, and

9   display collectibles, including trading cards and playing cards.

10  30.  The products that BCW Diversified sells directly compete with the

11  products sold by Plaintiff.

12  31.  BCW Diversified sells plastic card holders under the name "Pro Pages." A

13  genuine and authentic website printout of BCW Diversified's Pro Pages

14  product is attached as Exhibit 10.

15  32.  BCW Diversified sells plastic card holders under the name "Pro 8-Pocket."

16  A genuine and authentic website printout of BCW Diversified's Pro 8-

17  Pocket product is attached as Exhibit 11.

18  33.  BCW Diversified sells plastic card holders of various sizes using the term

19  "Pro [#]-Pocket" where the number depends on the number of pockets

20  found on the holder.

21  34.  Upon information and belief, BCW Diversified's Pro Pages and Pro [#]-

22  Pocket  products are plastic card holders intended to be inserted into metal

23  clamp binders.

24  35.  BCW Diversified's Pro Pages and Pro [#]-Pocket products infringe

25  Plaintiff's ULTRA PRO and PRO-BINDER trademarks.

26  36.  BCW Diversified's Pro Pages and Pro [#]-Pocket product names are

27  confusingly similar to Plaintiff's ULTRA PRO and PRO-BINDER

28  trademarks.

37. BCW Diversified's Pro Pages and Pro [#]-Pocket product names create a false association and false designation of origin with Plaintiff.

38. BCW Diversified's Pro Pages and Pro [#]-Pocket product names dilute the distinctiveness of Plaintiff's ULTRA PRO and PRO-BINDER trademarks.

39. BCW Diversified sells plastic card holders under the name "Card Sleeves." BCW Diversified refers to these Card Sleeves as "penny sleeves" on its website. A genuine and authentic website printout of BCW Diversified's Card Sleeves showing it refer to the product as "penny sleeves" is attached as Exhibit 12.

40. BCW Diversified's use of the term "penny sleeves" infringes Plaintiff's PENNY SLEEVES trademark.

41. BCW Diversified's use of the term "penny sleeves" is confusingly similar to Plaintiff's PENNY SLEEVES trademark.

42. BCW Diversified's use of the term "penny sleeves" creates a false association and false designation of origin with Plaintiff.

43. BCW Diversified's use of the term "penny sleeves" is dilutes the distinctiveness of Plaintiff's PENNY SLEEVES trademark.

44. BCW Diversified sells a plastic card holder under the name Mini Snap. A genuine and authentic website printout of BCW Diversified's Mini Snap product is attached as Exhibit 13

45. BCW Diversified's Mini Snap product infringes Plaintiff's MINI SNAP trademark.

46. BCW Diversified's Mini Snap product name is confusingly similar to Plaintiff's MINI SNAP trademark.

47. BCW Diversified's Mini Snap product name creates a false association and false designation of origin with Plaintiff.

48. BCW Diversified's Mini Snap product name dilutes the distinctiveness of Plaintiff's MINI SNAP trademark.

49.    BCW Diversified sells a container for holding collectible cards under the name Deck Vault. A genuine and authentic website printout of BCW Diversified's Deck Vault product is attached as Exhibit 14.

50.    BCW Diversified's Deck Vault product infringes Plaintiff's DECK VAULT trademark.

51.    BCW Diversified's Deck Vault product name is confusingly similar to Plaintiff's DECK VAULT trademark.

52.    BCW Diversified's Deck Vault product name creates a false association and false designation of origin with Plaintiff.

53.    BCW Diversified's Deck Vault product name dilutes the distinctiveness of Plaintiff's DECK VAULT trademark.

54.    BCW Diversified sells a plastic card holder under the name Chroma. A genuine and authentic website printout of BCW Diversified's Chroma product is attached as Exhibit 16.

55.    BCW Diversified's Chroma product infringes Plaintiff's CHROMAFUSION TECHNOLOGY trademark.

56.    BCW Diversified's Chroma product name is confusingly similar to Plaintiff's CHROMAFUSION TECHNOLOGY trademark.

57.    BCW Diversified's Chroma product name creates a false association and false designation of origin with Plaintiff.

58.    BCW Diversified sells a plastic card holder under the name Toploaders. A genuine and authentic website printout of BCW Diversified's Topladers product is attached as Exhibit 15.

59.    BCW Diversified sells a plastic card holder under the name Topload. A genuine and authentic website printout of BCW Diversified's Toplad product is attached as Exhibit 16.

60.    BCW Diversified's Toploaders and Topload products infringe Plaintiff's TOPLOADER trademark.

61. BCW Diversified's Toploaders and Topload product names are confusingly similar to Plaintiff's TOPLOADER trademark.

62. BCW Diversified's Toploaders and Topload product names create a false association and false designation of origin with Plaintiff.

63. BCW Diversified's Toploaders and Topload product names dilute the distinctiveness of Plaintiff's TOPLOADER trademark.

**COUNT ONE: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 1,687,833 (15 U.S.C. § 1114)**

64. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

65. Plaintiff owns trademark rights in valid U.S. Registration No. 1,687,833 for the mark ULTRA PRO.

66. The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

67. Defendants sell products through the same channels of trade as Plaintiff.

68. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendants have manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

69. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' products is likely to cause and is causing

confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

70. Defendants are using a mark similar to Plaintiff's ULTRA PRO mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

71. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

72. Defendants have caused injury to Plaintiff, are likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT TWO: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 1,687,833 (15 U.S.C. § 1125(a))**

73. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

74. The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's ULTRA PRO mark is likely to cause confusion to the general purchasing public.

75. By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and create a likelihood of confusion by consumers as to the source of such merchandise.

76. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

77. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

78. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT THREE: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 1,687,833 (15 U.S.C. § 1125(c))

79. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

80. Plaintiff's ULTRA PRO mark is an inherently distinctive trademark.

81. Plaintiff has exclusively and exhaustively used the ULTRA PRO trademark to promote its products for decades.

82. Plaintiff has generated vast sales over the years under the ULTRA PRO mark.

83. Plaintiff has spent large amounts of money over numerous years marketing and advertising its ULTRA PRO mark.

84. Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the

ULTRA PRO mark among the general consuming public of the United States, Plaintiff's ULTRA PRO mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

85.    Upon information and belief, Plaintiff's ULTRA PRO mark became famous before Defendants began using any similar mark.

86.    Defendants are diluting and destroying the distinctiveness of Plaintiff's ULTRA PRO mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

87.    Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendants' intent to create an association with Plaintiff, Defendants' actions are greatly diminishing and causing dilution by blurring of Plaintiff's ULTRA PRO mark.

88.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

89.    As a result of Defendants' conduct and actions, Plaintiff's ULTRA PRO trademark has been diluted, blurred, and diminished. Defendants have caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive ULTRA PRO trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT FOUR: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 1,857,678 (15 U.S.C. § 1114)**

90.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

91. Plaintiff owns trademark rights in valid U.S. Registration No. 1,857,678 for the mark ULTRA PRO.

92. The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

93. Defendants sell products through the same channels of trade as Plaintiff.

94. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendants have manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

95. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

96. Defendants are using a mark similar to Plaintiff's ULTRA PRO mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

97. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

98.   Defendants have caused injury to Plaintiff, are likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT FIVE: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 1,857,678 (15 U.S.C. § 1125(a))**

99.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

100.  The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's ULTRA PRO mark is likely to cause confusion to the general purchasing public.

101.  By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and creates a likelihood of confusion by consumers as to the source of such merchandise.

102.  Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

103.  Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

104.    The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

**COUNT SIX: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 1,857,678 (15 U.S.C. § 1125(c))**

105.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

106.    Plaintiff's ULTRA PRO mark is an inherently distinctive trademark.

107.    Plaintiff has exclusively and exhaustively used the ULTRA PRO trademark to promote its products for decades.

108.    Plaintiff has generated vast sales over the years under the ULTRA PRO mark.

109.    Plaintiff has spent large amounts of money over numerous years marketing and advertising its ULTRA PRO mark.

110.    Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the ULTRA PRO mark among the general consuming public of the United States, Plaintiff's ULTRA PRO mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

111.    Upon information and belief, Plaintiff's ULTRA PRO mark became famous before Defendants began using any similar mark.

112.    Defendants are diluting and destroying the distinctiveness of Plaintiff's ULTRA PRO mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

113.  Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendants' intent to create an association with Plaintiff, Defendants' actions are greatly diminishing and causing dilution by blurring of Plaintiff's ULTRA PRO mark.

114.  Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

115.  As a result of Defendants' conduct and actions, Plaintiff's ULTRA PRO trademark has been diluted, blurred, and diminished. Defendants have caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive ULTRA PRO trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT SEVEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 4,691,748 (15 U.S.C. § 1114)**

116.  The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

117.  Plaintiff owns trademark rights in valid U.S. Registration No. 4,691,748 for the mark ULTRA PRO.

118.  The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value.  Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products.  Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

119.  Defendants sell products through the same channels of trade as Plaintiff.

120. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendants have manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

121. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

122. Defendants are using a mark similar to Plaintiff's ULTRA PRO mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

123. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

124. Defendants have caused injury to Plaintiff, are likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT EIGHT: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 4,691,748 (15 U.S.C. § 1125(a))**

125. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

126.   The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's ULTRA PRO mark is likely to cause confusion to the general purchasing public.

127.   By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and creates a likelihood of confusion by consumers as to the source of such merchandise.

128.   Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

129.   Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

130.   The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

**COUNT NINE: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 4,691,748 (15 U.S.C. § 1125(c))**

131.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

132.   Plaintiff's ULTRA PRO mark is an inherently distinctive trademark.

133. Plaintiff has exclusively and exhaustively used the ULTRA PRO trademark to promote its products for decades.

134. Plaintiff has generated vast sales over the years under the ULTRA PRO mark.

135. Plaintiff has spent large amounts of money over numerous years marketing and advertising its ULTRA PRO mark.

136. Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the ULTRA PRO mark among the general consuming public of the United States, Plaintiff's ULTRA PRO mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

137. Upon information and belief, Plaintiff's ULTRA PRO mark became famous before Defendants began using any similar mark.

138. Defendants are diluting and destroying the distinctiveness of Plaintiff's ULTRA PRO mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

139. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendants' intent to create an association with Plaintiff, Defendants' actions are greatly diminishing and causing dilution by blurring of Plaintiff's ULTRA PRO mark.

140. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

141.   As a result of Defendants' conduct and actions, Plaintiff's ULTRA PRO trademark has been diluted, blurred, and diminished. Defendants have caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive ULTRA PRO trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT TEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 7,395,393 (15 U.S.C. § 1114)**

142.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

143.   Plaintiff owns trademark rights in valid U.S. Registration No. 7,395,393 for the mark PRO-BINDER.

144.   The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value.  Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products.  Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

145.   Defendants sell products through the same channels of trade as Plaintiff.

146.   Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendants have manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

147.   Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' products is likely to cause and is causing

confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

148. Defendants are using a mark similar to Plaintiff's PRO-BINDER mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

149. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

150. Defendants have caused injury to Plaintiff, are likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT ELEVEN: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 7,395,393 (15 U.S.C. § 1125(a))**

151. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

152. The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's PRO-BINDER mark is likely to cause confusion to the general purchasing public.

153. By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and creates a likelihood of confusion by consumers as to the source of such merchandise.

154. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

155. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

156. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT TWELVE: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 7,395,393 (15 U.S.C. § 1125(c))

157. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

158. Plaintiff's PRO-BINDER mark is an inherently distinctive trademark.

159. Plaintiff has exclusively and exhaustively used the PRO-BINDER trademark to promote its products for decades.

160. Plaintiff has generated vast sales over the years under the PRO-BINDER mark.

161. Plaintiff has spent large amounts of money over numerous years marketing and advertising its PRO-BINDER mark.

162. Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the

PRO-BINDER mark among the general consuming public of the United States, Plaintiff's PRO-BINDER mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

163. Upon information and belief, Plaintiff's PRO-BINDER mark became famous before Defendants began using any similar mark.

164. Defendants are diluting and destroying the distinctiveness of Plaintiff's PRO-BINDER mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

165. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendants' intent to create an association with Plaintiff, Defendants' actions are greatly diminishing and causing dilution by blurring of Plaintiff's PRO-BINDER mark.

166. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

167. As a result of Defendants' conduct and actions, Plaintiff's PRO-BINDER trademark has been diluted, blurred, and diminished. Defendants have caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive PRO-BINDER trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT THIRTEEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 6,615,503 (15 U.S.C. § 1114)**

168. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

169. Plaintiff owns trademark rights in valid U.S. Registration No. 6,615,503 for the mark PENNY SLEEVES.

170. The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

171. Defendants sell products through the same channels of trade as Plaintiff.

172. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendants have manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

173. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

174. Defendants are using a mark similar to Plaintiff's PENNY SLEEVES mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

175.   Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

176.   Defendants have caused injury to Plaintiff, are likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT FOURTEEN: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 6,615,503 (15 U.S.C. § 1125(a))**

177.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

178.   The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's PENNY SLEEVES mark is likely to cause confusion to the general purchasing public.

179.   By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and creates a likelihood of confusion by consumers as to the source of such merchandise.

180.   Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

181.   Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

182.   The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

## COUNT FIFTEEN: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 6,615,503 (15 U.S.C. § 1125(c))

183.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

184.   Plaintiff's PENNY SLEEVES mark is an inherently distinctive trademark.

185.   Plaintiff has exclusively and exhaustively used the PENNY SLEEVES trademark to promote its products for decades.

186.   Plaintiff has generated vast sales over the years under the PENNY SLEEVES mark.

187.   Plaintiff has spent large amounts of money over numerous years marketing and advertising its PENNY SLEEVES mark.

188.   Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the PENNY SLEEVES mark among the general consuming public of the United States, Plaintiff's PENNY SLEEVES mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

189.   Upon information and belief, Plaintiff's PENNY SLEEVES mark became famous before Defendants began using any similar mark.

190. Defendants are diluting and destroying the distinctiveness of Plaintiff's PENNY SLEEVES mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

191. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendants' intent to create an association with Plaintiff, Defendants' actions are greatly diminishing and causing dilution by blurring of Plaintiff's PENNY SLEEVES mark.

192. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

193. As a result of Defendants' conduct and actions, Plaintiff's PENNY SLEEVES trademark has been diluted, blurred, and diminished. Defendants have caused, and will continue to cause, irreparable injury to Plaintiff's goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive PENNY SLEEVES trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT SIXTEEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1114)**

194. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

195. Plaintiff owns trademark rights in valid U.S. Registration No. 6,615,452 for the mark MINI SNAP.

196. The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value.  Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products.  Consumers

1    associate the Plaintiff's mark with the Plaintiff as the source of the very

2    highest quality products.

3    197.  Defendants sell products through the same channels of trade as Plaintiff.

4    198.  Without the Plaintiff's authorization or consent, and having knowledge of

5    the Plaintiff's well-known and prior rights in the Plaintiff's mark and the

6    fact that Defendants' products are sold using a mark identical or

7    confusingly similar to the Plaintiff's mark, the Defendants have

8    manufactured, distributed, offered for sale and/or sold products to the

9    consuming public in direct competition with Plaintiff's sale of genuine

10    products, in or affecting interstate commerce.

11    199.  Defendants' use of copies or approximations of the Plaintiff's mark in

12    conjunction with Defendants' products is likely to cause and is causing

13    confusion, mistake and deception among the general purchasing public as

14    to the origin of the Defendants' products, and is likely to deceive the public

15    into believing the products being sold by Defendants originate from, are

16    associated with or are otherwise authorized by the Plaintiff, all to the

17    damage and detriment of the Plaintiff's reputation, goodwill, and sales.

18    200.  Defendants are using a mark similar to Plaintiff's MINI SNAP mark that is

19    in violation of the federal trademark laws including 15 U.S.C. § 1114.

20    201.  Plaintiff has no adequate remedy at law and, if Defendants' activities are

21    not enjoined, the Plaintiff will continue to suffer irreparable harm and

22    injury to its goodwill and reputation.

23    202.  Defendants have caused injury to Plaintiff, are likely to continue causing

24    injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages,

25    cost, reasonable attorneys' fees, and any other remedies the Court deems

26    just and proper.

27

28

**COUNT SEVENTEEN: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1125(a))**

203. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

204. The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's MINI SNAP mark is likely to cause confusion to the general purchasing public.

205. By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and creates a likelihood of confusion by consumers as to the source of such merchandise.

206. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

207. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

208. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

**COUNT EIGHTEEN: FEDERAL TRADEMARK DILUTION OF U.S.**
**TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1125(c))**

209.  The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

210.  Plaintiff's MINI SNAP mark is an inherently distinctive trademark.

211.  Plaintiff has exclusively and exhaustively used the MINI SNAP trademark to promote its products for decades.

212.  Plaintiff has generated vast sales over the years under the MINI SNAP mark.

213.  Plaintiff has spent large amounts of money over numerous years marketing and advertising its MINI SNAP mark.

214.  Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the MINI SNAP mark among the general consuming public of the United States, Plaintiff's MINI SNAP mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

215.  Upon information and belief, Plaintiff's MINI SNAP mark became famous before Defendants began using any similar mark.

216.  Defendants are diluting and destroying the distinctiveness of Plaintiff's MINI SNAP mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

217.  Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendants' intent to create an association with Plaintiff, Defendants' actions are

greatly diminishing and causing dilution by blurring of Plaintiff's MINI
SNAP mark.

218. Defendants' actions demonstrate an intentional, willful, and malicious
intent to trade on the goodwill associated with Plaintiff's mark, to the great
and irreparable injury of Plaintiff.

219. As a result of Defendants' conduct and actions, Plaintiff's MINI SNAP
trademark has been diluted, blurred, and diminished. Defendants have
caused, and will continue to cause, irreparable injury to Plaintiff's goodwill
and business reputation, and dilution of the distinctiveness and value of
Plaintiff's famous and distinctive ULTRA PRO trademark, in violation of
15 U.S.C. § 1125(c).

## COUNT NINETEEN: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1114)

220. The Plaintiff repeats and realleges the foregoing allegations above as if
fully set forth herein.

221. Plaintiff owns trademark rights in valid U.S. Registration No. 6,615,452
for the mark DECK VAULT.

222. The Plaintiff's mark and the goodwill of the business associated with it in
the United States and throughout the world are of great and incalculable
value.  Plaintiff's mark is highly distinctive and has become universally
associated in the public mind with Plaintiff's products.  Consumers
associate the Plaintiff's mark with the Plaintiff as the source of the very
highest quality products.

223. Defendants sell products through the same channels of trade as Plaintiff.

224. Without the Plaintiff's authorization or consent, and having knowledge of
the Plaintiff's well-known and prior rights in the Plaintiff's mark and the
fact that Defendants' products are sold using a mark identical or
confusingly similar to the Plaintiff's mark, the Defendants have

manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

225. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

226. Defendants are using a mark similar to Plaintiff's DECK VAULT mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

227. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

228. Defendants have caused injury to Plaintiff, are likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT TWENTY: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1125(a))**

229. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

230. The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's

DECK VAULT mark is likely to cause confusion to the general purchasing public.

231. By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and creates a likelihood of confusion by consumers as to the source of such merchandise.

232. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

233. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

234. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

**COUNT TWENTY-ONE: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 6,615,452 (15 U.S.C. § 1125(c))**

235. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

236. Plaintiff's DECK VAULT mark is an inherently distinctive trademark.

237. Plaintiff has exclusively and exhaustively used the DECK VAULT trademark to promote its products for decades.

238. Plaintiff has generated vast sales over the years under the DECK VAULT mark.

239. Plaintiff has spent large amounts of money over numerous years marketing and advertising its DECK VAULT mark.

240. Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the DECK VAULT mark among the general consuming public of the United States, Plaintiff's DECK VAULT mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

241. Upon information and belief, Plaintiff's DECK VAULT mark became famous before Defendants began using any similar mark.

242. Defendants are diluting and destroying the distinctiveness of Plaintiff's DECK VAULT mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

243. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendants' intent to create an association with Plaintiff, Defendants' actions are greatly diminishing and causing dilution by blurring of Plaintiff's DECK VAULT mark.

244. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

245. As a result of Defendants' conduct and actions, Plaintiff's DECK VAULT trademark has been diluted, blurred, and diminished. Defendants have caused, and will continue to cause, irreparable injury to Plaintiff's goodwill

and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive DECK VAULT trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT TWENTY-TWO: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 7,003,716 (15 U.S.C. § 1114)**

246.    The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

247.    Plaintiff owns trademark rights in valid U.S. Registration No. 7,003,716 for the mark CHROMAFUSION TECHNOLOGY.

248.    The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value.  Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products.  Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

249.    Defendants sell products through the same channels of trade as Plaintiff.

250.    Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or confusingly similar to the Plaintiff's mark, the Defendants have manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

251.    Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are

associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

252. Defendants are using a mark similar to Plaintiff's CHROMAFUSION TECHNOLOGY mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

253. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

254. Defendants have caused injury to Plaintiff, are likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT TWENTY-THREE: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 7,003,716 (15 U.S.C. § 1125(a))**

255. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

256. The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's CHROMAFUSION TECHNOLOGY mark is likely to cause confusion to the general purchasing public.

257. By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and creates a likelihood of confusion by consumers as to the source of such merchandise.

258. Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a

mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

259. Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

260. The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

**COUNT TWENTY-FOUR: FEDERAL TRADEMARK INFRINGEMENT OF U.S. TRADEMARK REG. NO. 6,976,683 (15 U.S.C. § 1114)**

261. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

262. Plaintiff owns trademark rights in valid U.S. Registration No. 6,976,683 for the mark TOPLOADER.

263. The Plaintiff's mark and the goodwill of the business associated with it in the United States and throughout the world are of great and incalculable value. Plaintiff's mark is highly distinctive and has become universally associated in the public mind with Plaintiff's products. Consumers associate the Plaintiff's mark with the Plaintiff as the source of the very highest quality products.

264. Defendants sell products through the same channels of trade as Plaintiff.

265. Without the Plaintiff's authorization or consent, and having knowledge of the Plaintiff's well-known and prior rights in the Plaintiff's mark and the fact that Defendants' products are sold using a mark identical or

confusingly similar to the Plaintiff's mark, the Defendants have manufactured, distributed, offered for sale and/or sold products to the consuming public in direct competition with Plaintiff's sale of genuine products, in or affecting interstate commerce.

266. Defendants' use of copies or approximations of the Plaintiff's mark in conjunction with Defendants' products is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing the products being sold by Defendants originate from, are associated with or are otherwise authorized by the Plaintiff, all to the damage and detriment of the Plaintiff's reputation, goodwill, and sales.

267. Defendants are using a mark similar to Plaintiff's TOPLOADER mark that is in violation of the federal trademark laws including 15 U.S.C. § 1114.

268. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, the Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

269. Defendants have caused injury to Plaintiff, are likely to continue causing injury to Plaintiff, and Plaintiff is entitled to injunctive relief, damages, cost, reasonable attorneys' fees, and any other remedies the Court deems just and proper.

**COUNT TWENTY-FIVE: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OF U.S. TRADEMARK REG. NO. 6,976,683 (15 U.S.C. § 1125(a))**

270. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

271. The products sold and offered for sale by Defendants are of the same nature and type as the Plaintiff's products sold and offered for sale by the Plaintiff and, as such, Defendants' use of a mark similar to Plaintiff's

TOPLOADER mark is likely to cause confusion to the general purchasing public.

272.  By misappropriating and using the Plaintiff's mark and trade names, Defendants misrepresent and falsely describe to the general public the origin and source of the Defendants' products and creates a likelihood of confusion by consumers as to the source of such merchandise.

273.  Defendants' unlawful, unauthorized, and unlicensed manufacture, distribution, offer for sale, and/or sale of the Defendants' products using a mark similar to Plaintiff's mark creates express and implied misrepresentations that Defendants' products were created, authorized or approved by the Plaintiff, all to Defendants' profit and to the Plaintiff's great damage and injury.

274.  Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the Plaintiff's Mark, product images and trade names, in connection with their goods and services in interstate commerce, constitutes a false designation of origin and unfair competition.

275.  The Plaintiff has no adequate remedy at law and, if the Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to their goodwill and reputation.

**COUNT TWENTY-SIX: FEDERAL TRADEMARK DILUTION OF U.S. TRADEMARK REG. NO. 6,976,683 (15 U.S.C. § 1125(c))**

276.  The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

277.  Plaintiff's TOPLOADER mark is an inherently distinctive trademark.

278.  Plaintiff has exclusively and exhaustively used the TOPLOADER trademark to promote its products for decades.

279. Plaintiff has generated vast sales over the years under the TOPLOADER mark.

280. Plaintiff has spent large amounts of money over numerous years marketing and advertising its TOPLOADER mark.

281. Taking into account the duration, extent, geographic reach of Plaintiff's advertising, the amount volume, and geographic extent of sales offered under Plaintiff's mark, and the high degree of actual recognition of the TOPLOADER mark among the general consuming public of the United States, Plaintiff's TOPLOADER mark is a well-known and famous symbol of Plaintiff's products and as a designation of the source of Plaintiff's products.

282. Upon information and belief, Plaintiff's TOPLOADER mark became famous before Defendants began using any similar mark.

283. Defendants are diluting and destroying the distinctiveness of Plaintiff's TOPLOADER mark by eroding the public's exclusive identification of the mark with Plaintiff, and otherwise lessening the capacity of the mark to identify and distinguish Plaintiff's products.

284. Considering the degree of similarity between the marks, the degree of inherent or acquired distinctiveness of Plaintiff's mark, and Defendants' intent to create an association with Plaintiff, Defendants' actions are greatly diminishing and causing dilution by blurring of Plaintiff's TOPLOADER mark.

285. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's mark, to the great and irreparable injury of Plaintiff.

286. As a result of Defendants' conduct and actions, Plaintiff's TOPLOADER trademark has been diluted, blurred, and diminished. Defendants have caused, and will continue to cause, irreparable injury to Plaintiff's goodwill

and business reputation, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive TOPLOADER  trademark, in violation of 15 U.S.C. § 1125(c).

**COUNT TWENTY-SEVEN: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200 et seq.)**

287. The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

288. Defendants have engaged in unlawful business acts or practices by using in commerce trademarks that are confusingly similar to Plaintiff's trademarks and performing acts to benefit from the goodwill of Plaintiff, all in an effort to gain an unfair competitive advantage.

289. These unlawful business acts or practices were and are committed pursuant to Defendants' business activities.

290. The acts and conduct of Defendants constitutes fraudulent, unlawful, and unfair competition as defined by California Business and Professions Code § 17200, et seq.

291. It would be inequitable to allow Defendants to retain the benefits obtained though the unlawful acts.

292. Plaintiff is a non-consumer and has suffered and is continuing to suffer economic injuries as a result of Defendants' unfair business practices.

293. As a result of such unfair competition, Plaintiff has suffered and is suffering irreparable injury and, unless Defendants are enjoined from such unfair competition, will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law. Defendants should be enjoined from further unlawful, unfair, and deceptive business practices. Therefore, Plaintiff is entitled to monetary and injunctive relief.

**COUNT TWENTY-EIGHT: VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500 et seq.)**

294.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

295.   California Business and Professions Code Section 17500 provides that it is unlawful for a corporation "to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . ."

296.   Defendants' representations, including statements made on their websites, in email marketing, and other written and oral materials they disseminated, contained statements that were false, misleading, or that omitted material information that Defendants were under a duty to disclose and which it knew or should have known to be false, misleading, or deceptive.

297.   Plaintiff is a non-consumer and has suffered and is continuing to suffer economic injuries a result of Defendants' false and misleading advertising. Plaintiff is therefore entitled to monetary and injunctive relief.

**COUNT TWENTY-NINE: TRADEMARK DILUTION CAL. BUS. & PROF. CODE § 14247**

298.   The Plaintiff repeats and realleges the foregoing allegations above as if fully set forth herein.

299.   Through Plaintiff's longstanding use of the above trademarks in commerce in the State of California, Plaintiff's marks have become impressed upon the minds of the relevant trade and consuming public as identifying

Plaintiff. The above trademarks have each become a well-known and famous symbol of Plaintiff's products among California consumers.

300. Plaintiff's above trademarks are distinctive and famous.

301. Defendants' actions are diluting and destroying the distinctiveness of Plaintiff's strong, distinctive, and famous trademarks by eroding the public's exclusive identification of the above trademarks with Defendants, tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish Plaintiff's products.

302. Defendants' actions are likely to cause injury to Plaintiff's business and reputation and dilution of the distinctive quality of Plaintiff's famous trademarks.

303. Defendants' actions are greatly diminishing and blurring the source-identifying capability of the Plaintiff's above trademarks through their marketing, advertising, and sale of unapproved products.

304. Plaintiff's trademarks became famous before Defendants began using any similar marks.

305. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's trademarks or to cause dilution of the above marks, to the great and irreparable injury of Plaintiff.

306. As a result of Defendants' conduct and actions, Plaintiff's above trademarks have been diluted, blurred, and diminished. Defendants have caused and will continue to cause irreparable injury to Plaintiff's goodwill and business reputations, and dilution of the distinctiveness and value of Plaintiff's famous and distinctive above trademarks.

307.   Plaintiff has been, and will continue to be, damaged and irreparably harmed by the actions of the Defendants, which will continue unless Defendants are enjoined by this Court.

308.   Plaintiff has no adequate remedy at law in that the amount of damage to Plaintiff's business and reputation and the diminution of the goodwill of Plaintiff's trademarks is difficult to ascertain with specificity.  Plaintiff is therefore entitled to injunctive relief pursuant to Cal. Bus. & Prof. Code § 14247.

309.   The actions of Defendants described herein were and continue to be deliberate and willful.  Plaintiff is therefore entitled to recover damages in an amount to be determined at trial, profits made by Defendants on the sales of infringing products, and the costs of this action pursuant to Cal. Bus. & Prof. Code §§ 14247 and 14250.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants in favor of the Plaintiff on all counts as follows:

1.   Award a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting Defendants and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns, and all those acting on behalf of or in active concert or participation with any of them, from unfairly competing with Plaintiff by using Plaintiff's trademarks, or mark confusingly similar to Plaintiff's trademarks.

2.   Award Plaintiff restitution in an amount to be determined at trial.

3.   Award Plaintiff damages in an amount to be determined at trial, including without limitation, Plaintiff's lost revenues and profits.

4.   That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of each of

1    Plaintiff's marks be increased by a sum not exceeding three times the

2    amount thereof as provided by law as provided by 15 U.S.C. § 1117(b);

3    5.    Alternatively, award Plaintiff statutory damages for each of Plaintiff's

4    marks as provided by 15 U.S.C. § 1117(c).

5    6.    Award Plaintiff pre-judgment and post-judgment interest.

6    7.    Award Plaintiff's attorneys' fees and costs.

7    8.    Award Plaintiff any such other relief as the Court deems appropriate.

8    **JURY DEMAND**

9    Plaintiff demands trial by jury on all issues that are triable by jury.

10

11   Respectfully Submitted,

12    Dated: October 1, 2024                    Respectfully submitted,

13

14                                              By:  /s/Alina Landver
                                                     Alina Landver
15                                                   California Bar # 231077
                                                     Landver Law Corporation APC
16                                                   9301 Wilshire Blvd, Suite 605
                                                     Beverly Hills, California 90210
17                                                   Tel: (310) 461-3737
                                                     Fax: (310) 461-3736
18                                                   Email: alina@landverlaw.com

19

20                                              By:   /s/Kevin Keener
                                                     Kevin Keener (IL Bar No. 6296898)
21                                                   *Pro Hac Vice*
                                                     161 North Clark Street, Suite 1600
22                                                   Chicago, Illinois 60601
                                                     Tel: (312) 523-2164
23                                                   Email: kevin.keener@keenerlegal.com

24                                              *Attorneys for Plaintiff*

25

26

27

28